Argued July 11, affirmed September 24, 1918.

## CHRISTENSON *v.* PORTLAND.

(175 Pac. 135.)

**Municipal Corporations—Clerk of Employment Bureau—Classification on Civil Service List.**

1. Classifying clerk of Portland free employment bureau, created by Ordinance No. 20,035, on civil service list as superintendent, as was done by Ordinance No. 27,951, did not give him any authority; his duties being those of a subordinate under the board's direction.

**Municipal Corporations—Free Employment Bureau—Right to be Director—Ordinances.**

2. Plaintiff having been clerk of Portland free employment bureau, created by Ordinance No. 20,035, with grade and title of superintendent under Ordinance No. 27,951, *held* not to entitle him to be appointed director of Portland public employment bureau, created by Ordinance No. 31,173.

**Municipal Corporations—Superintendent of Free Employment Bureau —Right to Office.**

3. Ordinance No. 31,173 of City of Portland, creating public employment bureau, being merely revision of Ordinance No. 20,035, creating free employment bureau, superintendent of free bureau was not legislated out of his office, because its name was changed to that of director and its duties enlarged, and, having been wrongfully removed by mayor, he had substantial right to office under its new name, which was lost by failure to appeal as prescribed by Portland City Charter, Section 108.

[As to what is a public office and how it is distinguished from mere employment, see notes in 72 Am. Dec. 179; 63 Am. St. Rep. 181.]

89 Or.—39

Municipal Corporations—Free Employment Bureau—Office of Clerk—Ordinance.

4. Though clerk of free employment bureau of Portland, created by Ordinance No. 20,035, was ranked as superintendent of bureau by Ordinance 27,951, as matter of law he was clerk of bureau, and, after enactment of Ordinance No. 31,173, remained clerk of public employment bureau thereby created, subject to removal by mayor.

Municipal Corporations—Officers—Break in Term—Abolition of Office.

5. If city ordinance professes to abolish office in one clause and in another to reinstate it, office has never been abolished in fact, and there has been no break in term of official.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is a proceeding in *mandamus* to compel the civil service board of the City of Portland to place the name of plaintiff at the head of the eligible list on the civil service register, and to certify his name to George L. Baker, a commissioner of said city and commissioner of public affairs thereof, and to require such commissioner to appoint plaintiff to the position of director of the Public Employment Bureau of said city, and to require the defendants to pay plaintiff as such director a salary at the rate of $150 per month from November 24, 1915.

The proceeding is based upon the following facts: On September 22, 1909, the City Council of Portland passed Ordinance No. 20,035, providing for a Free Employment Bureau, which ordinance provided, among other things, that the bureau should be under the control, supervision and direction of three members to be appointed by the mayor, and to consist of one member of the City Council; one member of the Trades Council, and one member of the Manufacturers' Association, all of said city. The three persons so appointed were to organize by electing one of its members president and one secretary. Their general duties were, to receive all applications for labor by persons

desiring employment and make a record of the same; to endeavor to procure employment for all applicants; in fine, it seems they were to do without compensation what other employment agencies usually did for a fee. It was further provided that the board should recommend to the mayor from a list of eligible persons a suitable person for clerk, who should be in charge of the office from 8 A. M. to 5 P. M. each day, except Sundays and holidays, and perform such other duties as the board should direct. The compensation for such clerk was fixed at $90 per month, and he was to hold office until his successor should be appointed in the manner above indicated. In January, 1912, plaintiff was appointed clerk of such board. On October 18, 1913, the City Council passed Ordinance No. 27,951, providing for the classification of employees of the City of Portland according to the class, rank and grade of service rendered to the city, and providing a method for standardization of salaries and wages. In this classification plaintiff is ranked as "Superintendent of the Free Employment Bureau," his salary being $1,800 a year. On November 12, 1915, the City Council passed Ordinance No. 31,117, purporting to create a public employment bureau in Portland. In order to indicate the similarities and differences between the newly created bureau and the one previously existing, we give the characteristic features of each in parallel columns.

| Old Bureau. | New Bureau. |
|---|---|
| Name. Free Employment Bureau. | Name. Public Employment Bureau. |
| Control. | Control. |
| 1. Three members appointed by the Mayor and approved by the Council. | 1. Organized by the Commissioner by appointment of two directors, one |

### Duties of the Board.

2. To receive all applications for labor by persons desiring employment, or desiring to employ labor; to record their names when requested, designating the character of labor or employment and the address of the applicant. To recommend to the Mayor a list of eligible persons, from which a clerk should be selected and appointed by him. To provide all books, etc., necessary for the successful operation of the office. To report to the Council at the beginning of each month the number of persons who have applied for employment; the number for whom employment has been obtained; the kind of employment secured, and whether such employment was in the city of Portland or elsewhere, and such other information as the council should direct.

3. To maintain a signboard upon the door of the office, bearing the designation "Free Employment Bureau of the City of Portland."

for men and one for women and children. Directors to be under the direction of the Commissioner, said directors to perform such duties as are prescribed in the Ordinance, and such other duties as the Commissioner may require.

### Duties of Directors.

2. To register applicants as in former ordinance. To put themselves in communication with the principal manufacturers, merchants and other employers of labor. To use diligence to secure the cooperation of such employers in the purposes of the Bureau; to advertise in papers or otherwise, so as to reach such employers; to give all available information as to positions offered to any person applying therefor, and to call the attention of the applicant to any statement or reply thereto with reference to any strike, lockout or industrial dispute, etc.

### Clerk.

The Commissioner to appoint such clerks and

Duties of Clerk.

4. To be in charge of the office from 8 A. M. to 5 P. M. of each day, except Sundays and holidays, and to perform such duties as may be required by the board.

stenographers as may be necessary, the number and salaries thereof to be determined by the Council, and to be selected according to civil service rules.

It was further provided that the directors should have executive and managerial ability; practical knowledge of the problem of unemployment, experience as administrative officers, and a capacity to direct investigations and devise remedies for unemployment.

On November 24, 1915, the City Council passed Ordinance No. 31,173, which professed to repeal Ordinance No. 31,117, and also Ordinances 20,035 and 16,913, which latter ordinance had already been repealed by Ordinance No. 20,035. Ordinances 31,117 and 31,173 are identical, except the concluding section of the latter ordinance, which is as follows:

"Section 14. Inasmuch as this ordinance is necessary for the preservation of the public health, peace and safety of the City of Portland in this; The unemployed of the city are in need of immediate aid and relief and the reorganization of the Employment Bureau will probably give them such aid, therefore, an emergency is hereby declared and this ordinance shall be in force and effect from and after its passage by the Council."

Ordinance 31,117 having been repealed before it went into effect will not hereafter be considered.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Richards & Richards,* with an oral argument by *Mr. Oren R. Richards.*

For respondents there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Henry A. Davis,* Deputy City Attorney, with an oral argument by *Mr. La Roche.*

McBRIDE, C. J.—1. It is very apparent that the office of directors of the Bureau of Public Employment is a substitute or continuation of the board of directors designated by Ordinance 31,173. The duties of these three directors were executive and administrative, made so by the ordinance itself. The duties of plaintiff were clerical and subject to the direction of the board. Classifying him on the civil service list as a superintendent did not give him any other or different authority or heighten his official stature. However he might be classified as to rank or salary, his duties were those of a subordinate working under the direction of the board.

The members of the board under Ordinance 31,173 were not required by the terms of the ordinance to be selected under civil service rules, and the provision last above cited indicates no intention that the directors of the bureau should be so selected. In fact the qualifications required indicate it was the intention of the lawmakers that the commissioner should choose with reference to particular and special qualifications, rather than to confine his selection from a list furnished by the civil service board, and based upon previous service in a position which, by the terms of the ordinance creating it, was largely clerical. It may also be noted in this connection, while there is nothing in the ordinance requiring the directors to be taken from the civil service list, Section 4 requires the necessary clerks to be selected subject to the civil service

provisions of the charter, thus indicating the legislative intent to enforce the civil service provisions of the charter as to persons appointed, as plaintiff was, to clerical positions and to directors appointed, as the old board was, with reference to peculiar qualifications for the executive and administrative duties imposed upon them.

2. The fact of plaintiff having been clerk of the board created by Ordinance No. 20,035, with the grade and title of superintendent, does not entitle him to be appointed director under the present ordinance. It is true the court found he performed substantially the same duties during his incumbency under the old board, as are required in terms to be performed by the directors provided for in Ordinance No. 31,173, or by any ordinance. In performing these duties he acted not upon his own initiative, but as the agent and servant of the board, and instead of being a "director" he was the person directed. The commissioner and the two directors provided for by Ordinance 31,173 occupy positions analogous to the councilman and the two members selected from the Manufacturers' Association and the Trades Council under the former ordinance, while plaintiff's relation would have been analogous to the office of clerk of the board thus constituted. While these analogies are not coincident in all respects, they may be said to exist in a general way in the two ordinances.

It may be observed that while Ordinance No. 28,011 classifies plaintiff as of the rank and grade of "superintendent," it nowhere defines his duties, which, under Ordinance No. 20,035, were of a clerical nature, neither does it profess to repeal any portion of Ordinance 20,035, but leaves plaintiff with the same duties and with the same restrictions as those prescribed in or im-

plied by the last-named ordinance. It also classifies Augusta Vehr as "assistant clerk" without providing for a principal clerk other than plaintiff. Indeed it may be at least doubtful whether the civil service board or the council could, under the pretext of classifying the positions then in existence, create a new office with duties and powers different from those conferred by the ordinance creating the office in the first instance, and designate the incumbent of such new office.

3, 4. In its final analysis Ordinance 31,173 is merely a revision or amendment of Ordinance 20,035. It does no more than change the name of the bureau and increase the scope of its labors. The general plan and duties of the two boards are practically identical. Conceding for the purpose of this discussion that the office of director in the ordinance first above named is identical with the alleged office of superintendent named in the ordinance last recited, which is the essence of plaintiff's contention, he was not legislated out of his office by virtue of the fact that the name of the office had been changed and the scope of its duties enlarged. Upon that theory there was no break in the continuity of the bureau, merely a change of its name and the name of the officer from superintendent to director, in which case the plaintiff would continue to hold the office under a new title. Having been removed by the mayor, he would, if such removal were wrongful, still have a substantial right to the office under its new name, which right would be lost only by failure to appeal, as prescribed by Section 108 of the charter. This he failed to do; therefore, upon his own theory he is out of court. The writer, however, is of the opinion that plaintiff's true status, notwithstanding the brevet title and grade given him in the classification ordinance, was clerical, that he was as a matter of

law clerk of the Free Employment Bureau and remained clerk of the Public Employment Bureau, subject to the order of removal. If the action of the commissioner should be reversed upon appeal to the civil service board he would remain clerk of the Public Employment Bureau; if the removal should be sustained, he was effectually barred.

5. Counsel for plaintiff in their very able and ingenious brief lay stress upon Section 109 of the charter, which is as follows:

"Section 109. SUSPENSIONS REDUCTION OF FORCE. Any appointing authority may suspend a subordinate for a reasonable period not exceeding thirty days, but such suspension if occurring more than once a year shall be deemed a removal and subject to investigation in like manner. But if at any time, the Council or other city authority shall abolish any office or employment, or reduce the number of employees, discharges shall be made in the inverse order of appointment, and if such offices or places shall again be created or reinstated, the employees so removed (except as to emergency employees) shall have preference for reappointment in the order of their original appointment."

Their argument is, that by Ordinance 31,173 the office of the superintendent of the Free Employment Bureau was abolished; that it has again been recreated or reinstated and, therefore, plaintiff is entitled to preference for reappointment. The answer is that Ordinance 31,173, which creates the Public Employment Bureau, also repeals the ordinance creating the Free Employment Bureau. There is but one ordinance on the subject and it is to be considered as a whole, and so considered it must be held that the Bureau was never abolished. If an ordinance professes to abolish an office in one clause and to reinstate

it in another, it follows logically that the office has never been abolished in fact, and that there has been no break in the continuity of the term of the official holding it. So, whether we call plaintiff a superintendent or clerk he was never out of his position by virtue of the passage of Ordinance 31,173, but lost it by failure to appeal from the order of removal, as required by Section 108 of the charter. The contention of plaintiff, when reduced to its lowest terms, seems to be that his position was abolished so far as his right to appeal was concerned, but remained in existence for the purpose of reinstatement. This is wholly illogical and unsound in law. We have no doubt plaintiff had a perfect right to appeal to the civil service board from the order of the commissioner removing him from his position, and this right existed notwithstanding the passage of Ordinance 31,173; and that if he had so appealed and his appeal had been sustained by the civil service board, he would have been entitled to reinstatement to a corresponding position in the Employment Bureau, as it existed under the provisions of the revised ordinance. He failed so to appeal and his removal was therefore final.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

BEAN, JOHNS and HARRIS, JJ., concur.